In re Dewey Howell PIPPIN, Sr. and Mrs. Mary Gould Pippin, Debtors.

In re Dewey Howell PIPPIN, Jr. and Mrs. Norine Donaldson Pippin, Debtors.

In re Larry Lamar PIPPIN and Mrs. Dorothy Self Pippin, Debtors.

Dewey Howell PIPPIN, Sr. and Mrs. Mary Gould Pippin, Dewey Howell Pippin, Jr. and Mrs. Norine Donaldson Pippin, Larry Lamar Pippin and Mrs. Dorothy Self Pippin, Complainants,

v.

JOHN DEERE COMPANY, Defendant.

Bankruptcy Nos. 582–00267–M, 582–00269–M and 582–00268–M. Adv. No. 583–0236.

United States Bankruptcy Court, W.D. Louisiana, Monroe Division.

Dec. 12, 1984.

3) AN—signed and executed on December 10, 1980, with the first installment payment due on December 20, 1981, in the amount of $10,519.37.

4) AM—signed and executed on March 24, 1981, with the first installment payment due on December 1, 1981, in the amount of $2,006.86.

5) AO—signed and executed on March 26, 1981, with the first installment payment due on December 1, 1981, in the amount of $17,859.61.

6) AP—signed and executed on July 17, 1981, with the first installment payment due on December 20, 1981, in the amount of $6,269.88.

The total amount due in December of 1981, on these installment notes is $65,023.12. On December 2, 1981, the Debtors issued check no. 4824 to John Deere Company, in the amount of $65,023.12. Said check was for payment of amounts due on Notes AI, AL, AM, AN, AO and AP. The check cleared the Debtors' bank on December 14, 1981. Said payment was made more than 45 days after the execution of the respective notes, but the payment was less than 45 days from the date that said installments were due.

The Debtors filed for relief, under Chapter 11, of Title 11 U.S.C., on March 4, 1982.

The payment of $65,023.12 was made within 90 days of the filing for relief under Chapter 11.

The Debtors' Consolidated Plan of Reorganization was confirmed on April 13, 1983.

The Debtors filed a Complaint to avoid the transfer of property to John Deere Company, on August 19, 1983. The basis of said complaint is 11 U.S.C. Section 547.

A hearing was held on this matter on January 11, 1984, at 11:00 o'clock a.m.

## FINDINGS OF FACT

LeROY SMALLENBERGER, Bankruptcy Judge.

The basic facts concerning this issue are not in dispute.

During the course of approximately one year and three months, Dewey Howell Pippin, Sr., Mary Gould Pippin, Dewey Howell Pippin, Jr., Norine Donaldson Pippin, Larry Lamar Pippin, and Dorothy Self Pippin, hereinafter referred to as Debtors, signed and executed six installment notes and mortgages payable to John Deere Company, hereinafter referred to as Creditor. They are as follows:

1) AI—signed and executed, on April 7, 1980, with the second installment payment due December 10, 1981, in the amount of $1,451.66.

2) AL—signed and executed, on August 26, 1980, with the first installment payment due on December 1, 1981, in the amount of $26,915.74.

## CONCLUSIONS OF LAW

Five conditions must be met in order for a transfer to be avoided under 11 U.S.C. Section 547(b). It reads as follows:

Section 547(b) Except as provided in subsection (c) of this section, the trustee

may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this Title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this Title.

### "Benefit of a Creditor"

 Since John Deere Company filed a proof of claim and it is generally undisputed that they are a creditor and such payment was made to them, this issue is well settled. Therefore, said payment was to the benefit of a creditor.

### "Antecedent Debt"

The second prong of the test is the most contested one. The creditor would like to place said payment within the exception provided for in Section 547(c)(2) which reads as follows:

(c) The trustee may not avoid under this Section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

This exception essentially takes out the second prong of the Section 547 test of a preference payment, that being "for or on account of an antecedent debt". The test of whether or not a debt was antecedent has been by Section 547(c)(2)(B), or the 45 day rule. That is, if a payment was made on a debt with 45 days of the debts' incurrence, then such debt was not antecedent. Likewise, if such payment was made after 45 days of the debts' incurrence, then it was considered to be antecedent. This brings us to the issue at hand; when was the debt incurred; when the contract was executed; or when the installment became due?

 The creditor in this case would have an installment payment treated the same as interest accruing on a debt, and cites to *In re Iowa Premium Service Co., Inc.,* 695 F.2d 1109 (8th Cir.1982), as support thereof. This court is in agreement with *In re Iowa's* treatment of interest in regard to a preference action. This court also feels that such cases cited as support of the accrued interest theory are distinguishable from the case at hand. Here we have an installment payment on a loan, fixed and determinable; whereas interest only becomes payable and certain as of the day for which it accrues. The creditor in the case at hand is attempting to focus on "when the debt was incurred, when the contract is executed or the date upon which debtor becomes legally bound to pay?" This court is of the opinion that the dates are one in the same. That is, the date on which a debtor executes a loan contract payable in installments, he also is and becomes legally bound to pay. To hold otherwise would be to ignore the case law in support thereof, *Barash v. Public Finance*

*Corp.*, 658 F.2d 504 (7th Cir.1981), *In re Bowen*, 3 B.R. 617 (1980), *In re Goodman Industries*, 21 B.R. 512 (1982), *In re Harold Raymond Satterla*, 5 C.B.C.2d 664, 15 B.R. 166 (1981). To hold otherwise would also create vast uncertainty in the area of security devices in determining the dates upon which they are perfected. Therefore, the second prong of the Section 547 preference test is met and the exception under Section 547(c) is not satisfied in that the payment made to the creditor herein, was made more than 45 days after such debt was incurred.

### "Debtor Insolvent"

 Section 547(f) creates a presumption of the debtor's insolvency during the 90 days immediately preceding the filing date of the petition for relief. Creditor submits a Purchase Statement signed and dated on September 28, 1981 in the rebuttal of the insolvency presumption. This statement was prepared more than 5 months prior to the filing for relief and is not sufficient to rebut the presumption of insolvency contained in Section 547(f).

### "Within 90 Days of Filing"

There is no dispute that the payment was made to John Deere Company within 90 days of the filing for relief.

### "Receiver More than in a Liquidation"

John Deere Company has obviously received more than it would have received in liquidation since a 100% dividend is highly unlikely, especially in a depressed market as farming was in 1982.

Therefore, the payment made to John Deere company on December 2, 1981, is a preference and is therefore recoverable.